[Cite as *Crum & Forster Indemnity Co. v. Ameritemps, Inc.*, 2013-Ohio-5419.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99610**

## CRUM & FORSTER INDEMNITY COMPANY

PLAINTIFF-APPELLEE

vs.

## AMERITEMPS, INC.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CP CV-686166

**BEFORE:**   E.A. Gallagher, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**    December 12, 2013

**ATTORNEYS FOR APPELLANT**

L. Terrence Ufholz
Corsin, Sanislo & Ufholz, L.L.C.
304 N. Cleveland-Massillon Rd.
Akron, OH    44333

Dennis J. Bartek
Bartek Law Office
2300 East Market Street
Suite E
Akron, OH    44312

**ATTORNEYS FOR APPELLEES**

**Crum & Forster Indemnity Company**

Gary W. Johnson
Weston Hurd L.L.P.
The Tower at Erieview
1301 East Ninth St., Ste. 1900
Cleveland, OH    44114

**National Union Fire Insurance Company**

Steven G. Janik
Crystal L. Maluchnik
Sonia M. Gassan
Janik L.L.P.
9200 South Hills Boulevard
Suite 300
Broadview Heights, OH    44147-3251

EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Ameritemps, Inc., a.k.a. Extinct Temps, Inc. ("Ameritemps"), appeals from the order of the trial court that awarded summary judgment to third-party defendant National Union Fire Insurance Company of Pittsburgh ("National Union") in a declaratory judgment action concerning its obligation to defend and indemnify under a commercial auto liability policy, and denied Ameritemps' own motion for summary judgment. For the following reasons, we affirm.

**{¶2}** This is the fourth appeal from two civil cases that resulted from a motor vehicle accident that happened on October 11, 2006. In *Crum & Forster Indemn. Co. v. Ameritemps*, 2012-Ohio-4160, 976 N.E.2d 957 (8th Dist.) ("*Crum & Forster I*"), this court set forth the relevant underlying facts and procedural history and stated:

> This case arises out of the October 11, 2006 motor vehicle accident involving Raymond Kestranek and defendant Kevin Crosby who traveled left of center and struck Kestranek's vehicle. At the time of the accident, Crosby, and his passengers Tabious Harris, Calin Tucker, and Joe Wimbley, were all employed by Ameritemps as temporary employees. *Kestranek v. Crosby*, 8th Dist. Cuyahoga No. 93163, 2010-Ohio-1208, ¶ 5. They were in Crosby's "own personal vehicle" and were en route to Prime Woodcraft, a job site in Garettsville, Ohio. *Id*. at ¶ 6. Following the accident, the Kestraneks filed suit against Ameritemps and various other parties and alleged, inter alia, that Ameritemps was vicariously liable for the negligent acts of its employee under a theory of respondeat superior. *Id*. at ¶ 11. The trial court found that Crosby was not in the course and scope of his employment at the time of the accident as a matter of law, and awarded Ameritemps summary judgment. *Id*. at ¶ 13.

**{¶3}** This court reversed and remanded, concluding that:

The record reveals that Crosby was not only transporting himself but three other individuals to the client's location, Prime Woodcraft, providing labor on behalf of Ameritemps, his employer. The record also contains testimony that Ameritemps required Harris and Tucker to drive with Crosby from Ameritemps' dispatch office and that Ameritemps stopped providing a van once Crosby started driving. The record further reveals that Ameritemps transferred money from the paychecks of those employees who rode with Crosby to Crosby's paycheck to compensate him for driving. Although Ameritemps characterizes its policy as a "mere favor" done for its employee, a conflicting inference can be made: Ameritemps transferred the money because it wanted Crosby to drive the other temporary employees in furtherance of its business. While Ameritemps attempts to distance itself from its employees' practice of riding together from the dispatch office, reasonable minds could find that they facilitated and promoted this arrangement. Indeed, an inference can be made that Ameritemps required Crosby to drive the other employees. Construing this evidence in a light most favorable to the Kestraneks, and given the conflicting inferences that can be drawn from the undisputed facts, we find that Ameritemps is not entitled to judgment as a matter of law.

**{¶4}** This court rejected the Kestraneks' request to find that Crosby was within the course and scope of his employment as a matter of law, noting that the Kestraneks did not move for summary judgment on that basis and that a reviewing court "cannot provide a party with relief that they did not first seek below."

**{¶5}** On February 27, 2009, Crum & Forster filed a declaratory judgment action seeking a determination of its duty to defend and indemnify under a commercial auto liability policy issued to Ameritemps. On October 6, 2010, Ameritemps filed a third-party complaint against National Union in the declaratory judgment action seeking

coverage under two insurance policies National Union issued to Ameritemps: a general liability policy and a commercial umbrella policy.

{¶6}    On December 23, 2011, the trial court granted summary judgment in favor of Crum & Forster and determined that Crum & Forster was not required to provide Ameritemps a defense or indemnification in the lawsuits arising from the October 11, 2006 motor vehicle accident caused by Crosby.   On appeal in *Crum & Forster I,* this court affirmed the trial court's grant of summary judgment.

{¶7}    On February 5, 2013, the trial court granted summary judgment in favor of National Union regarding its duty to defend and indemnify Ameritemps in the underlying litigation and denied a cross motion for summary judgment filed by Ameritemps. This appeal followed.

{¶8}    In its sole assignment of error Ameritemps argues that the trial court erred in granting summary judgment in favor of National Union because issues of material fact exist to be determined at trial.

{¶9}    Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to

the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶10} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982); *Value City, Inc. v. Integrity Ins. Co.*, 30 Ohio App.3d 274, 276, 508 N.E.2d 184 (10th Dist.1986).

{¶11} In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention. *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970). Where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract

by implication in order to embrace an object distinct from that contemplated by the parties. *Gomolka* at 168.

{¶12} However, where the provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be strictly construed against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), paragraph one of the syllabus.

{¶13} An insurer's duty to defend is broader than, and distinct from, its duty to indemnify. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. *Id.* The insurer must defend the insured in an action when the allegations state a claim that potentially, or arguably, falls within the liability insurance coverage but the insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage. *Id.*

{¶14} National Union issued two insurance policies to Ameritemps that were in effect at the time of the underlying motor vehicle accident. The general liability policy, in "Section I. Coverages" provides in relevant part:

> We will pay those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. * * *

**{¶15}** The general liability policy contains an "Aircraft, Auto or Watercraft" exclusion that provides that the insurance does not apply to:

> Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any * * * auto * * * owned or operated by * * * any insured.

**{¶16}** Section II defines who is an insured under the general liability contract and includes within that definition:

> Your employees, other than your executive officers, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. * * *

**{¶17}** Ameritemps argues that a question of fact remains as to whether or not Crosby was acting within the scope of his employment at the time of the accident and because such question exists, the accident arguably falls within the general liability insurance coverage thus triggering National Union's duty to defend. National Union maintains that Crosby was acting within the scope of his employment with Ameritemps at the time of the accident and cites our decision in *Crum & Forster I* as having determined this issue. Indeed, in that case we found an exclusion in the Crum & Forster auto insurance policy to be applicable because we found Crosby to be an employee who was injured arising out of and in the course of his employment by

Ameritemps.[1]  *Id.* at ¶ 21.

**{¶18}** The doctrine of the law of the case establishes that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.  *U.S. Bank Natl. Assn. v. Perry*, 8th Dist. Cuyahoga No. 99608, 2013-Ohio-3814, ¶ 10, citing *Pipe Fitters Union Local No. 392 v. Kokosing Constr. Co., Inc.*, 81 Ohio St.3d 214, 218, 1998-Ohio-465, 690 N.E.2d 515.

**{¶19}** Consistent with our decision in *Crum & Forster I*, we find that Crosby was an employee of Ameritemps acting within the scope of his employment at the time of the accident.  Therefore, Crosby qualifies as an "insured" under the National Union general liability policy and the "Aircraft, Auto or Watercraft" exclusion applies to bar coverage.

**{¶20}** Appellant next argues that the general liability policy provides coverage under the "Employer's Liability Coverage Stop Gap Endorsement."  The endorsement states:

---

[1]Appellant correctly points out that our decision in *Crum & Forster* went further than our decision in *Kestranek v. Crosby*, 8th Dist. Cuyahoga No. 93163, 2010-Ohio-1208, wherein we declined to find that Crosby was within the course and scope of his employment as a matter of law.  Our decision in *Kestranek* did not foreclose such a finding, rather we explained that the Kestraneks never moved for partial summary judgment asking the trial court to make such a declaration and upon de novo review we could not provide a party with relief that they did not first

We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages arising out of Employer's Liability caused by an occurrence or offense that takes place within the coverage territory and during the policy period.

**{¶21}** The endorsement defines "Employer's Liability" as "liability for bodily injury arising out of and in the course of an insured employee's employment by you provided that the employment must be necessary or incidental to YOUR work." However, the endorsement clearly states that it "forms a part of" the general liability policy itself and further states in bold capital letters:

**ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**{¶22}** We examine an insurance contract as a whole, which means that an endorsement is read as though it is within the policy. *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 18, citing *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 30.

**{¶23}** The stop gap endorsement in this policy plainly states that the exclusions of the general liability policy remain unchanged. This is not an instance where the stop gap provision specifically modified the general liability policy by deleting a specific exclusion. *See*, *e.g., Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 5. The "Aircraft, Auto or Watercraft" exclusion

---

seek below.

remains unchanged by the stop gap endorsement and applies to bar coverage under the entire policy, including the stop gap endorsement. Therefore, we conclude that the subject accident and underlying litigation did not trigger a duty to defend or indemnify on the part of National Union pursuant to either the general liability policy or its stop gap endorsement.

{¶24} Appellant next argues that National Union owed a duty to defend the underlying litigation pursuant to a commercial umbrella policy in effect at the time of the accident. That policy provides in relevant part:

I. Coverage

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence.

* * *

II. Defense

We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:

1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

2. Damages are sought for Bodily Injury, Property Damage, Personal Injury or

Advertising Injury covered by this policy but not covered by any underlying insurance listed in the schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

**{¶25}** However, the commercial umbrella policy contains an "Automobile Liability Follow-Form Endorsement" which provides:

This Insurance does not apply to Bodily Injury or Property Damage rising out of the ownership, maintenance, operation, use, loading or unloading of any auto.

However, if insurance for such Bodily Injury or Property Damage is provided by a policy listed in the Schedule of Underlying Insurance:

1. This exclusion shall not apply; and

2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**{¶26}** The above endorsement excludes automobile liability coverage except to the extent that such coverage is provided within the schedule of underlying insurance. The parties do not dispute that at the time of the accident appellant had underlying automobile liability insurance in the form of the Crum & Forster policy addressed above. As this court previously found in *Crum & Forster I,* the Crum & Forster policy does not provide coverage for the subject accident, and broader coverage cannot be found within the above endorsement.

**{¶27}** Finally, appellant's argument in favor of stop gap coverage under the commercial umbrella policy fails for the same reason. The stop gap liability insurance that appellant cites within the schedule of underlying insurance is the National Union

stop gap liability provision from the general liability policy.   We determined above that the stop gap provision in the general liability policy did not provide coverage for the subject accident and, as such, it cannot create coverage under the commercial umbrella policy.[2]   Appellant's arguments that a duty to defend or indemnify on the part of National Union was triggered by the subject accident and underlying litigation pursuant to the commercial umbrella policy are without merit.

{¶28}   We conclude that the trial court did not err in granting summary judgment in favor of National Union and denying appellant's motion for summary judgment.

{¶29}   Appellant's sole assignment of error is overruled.

{¶30}   The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[2] Although not explicitly argued by appellant, the same logic applies to preclude coverage through the general liability policy that is listed on the schedule of underlying insurance in the commercial umbrella policy.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR