[Cite as *Loftus v. Three Palms Crocker Park, L.L.C.*, 2023-Ohio-926.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

GERARD LOFTUS, ET AL.,            :

      Plaintiffs-Appellants,            :

                                  No. 111635

      v.            :

THREE PALMS CROCKER PARK, LLC,            :
ET AL.,

                                         :

      Defendants-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** March 23, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932382

---

### *Appearances:*

Flowers & Grube, Paul W. Flowers, Louis E. Grube, and
Melissa A. Ghrist; Charles V. Longo Co., L.P.A. and
Charles V. Longo, *for appellant*.

Bailey Cavalieri LLC, Elan Kandel, Sabrina Haurin, and
Elizabeth E. Cary, *for appellee* State Automobile Mutual
Insurance Company.

Glowacki, Imbrigiotta & Doucette, L.P.A., and Stephen B.
Doucette; Schneider, Smeltz, Spieth, Bell LLP and
Thomas J. Connick, *for appellee* Three Palms Crocker
Park, LLC.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} This case involves whether an employer and its insurer are liable for a motor vehicle accident caused by an employee. The issue is whether the employee was in the course and scope of employment and/or acting in furtherance of the employer's business at the time of the accident. Based upon the undisputed material facts in this case, we affirm the trial court's order granting summary judgment because the employee involved in the motor vehicle accident was neither acting within the scope of his employment nor acting in furtherance of the employer's business.[1]

## I. Procedural History and Factual Overview

{¶ 2} On March 1, 2019, plaintiff-appellant Gerard Loftus was severely injured as a passenger in a single-car accident in which defendant-appellant Robert Sotka was the driver. The accident occurred in Ottawa County, Ohio as Sotka was driving to Westlake, Ohio.

{¶ 3} Sotka was the manager at the Three Palms pizzeria restaurant at Crocker Park in Westlake, Ohio. Sotka was a social acquaintance and friend of Loftus, and Loftus was a frequent patron of the restaurant. In fact, both men had an

---

[1] This case is a companion case to *Loftus v. Three Palms Crocker Park, LLC*, 8th Dist. Cuyahoga No. 111639, in which Sotka appeals the same judgment entry granting summary judgment.

apartment near the restaurant in Crocker Park and socialized together multiple times a week.

{¶ 4} Sotka had discussions with Loftus about potentially purchasing a restaurant with him. One restaurant that was briefly discussed was the Canoe Club in Catawba Island Township, near one of Loftus's homes. Another restaurant was Flip Side Restaurant in Rocky River, Ohio. A letter of intent had been drafted and was scheduled to be signed by Loftus and Sotka on March 4, 2019, regarding the purchase of Flip Side.

{¶ 5} On Friday, March 1, 2019, Sotka left the restaurant at 5:15 p.m. and traveled over 60 miles to the Canoe Club to meet Loftus and a group of Loftus's friends. While Loftus testified that he was not interested in investing in the Canoe Club because of the seasonal nature of the business, Sotka wanted to introduce Loftus to the owner of the Canoe Club that night. When he arrived at the Canoe Club at 6:20 p.m., Sotka had a tour of the Canoe Club from the owner and joined Loftus and his friends for a drink. After socializing with everyone at the Canoe Club, Sotka went to another bar in the area with Loftus and his friends, and later went to back to one of the friends' homes.

{¶ 6} At around 10:00 p.m., Sotka decided to leave the group and return to Westlake, Ohio. He stated that he intended to return to the restaurant before 11:00 p.m. to supervise closing. Although the restaurant closed at 10:00 p.m., Sotka testified that on occasion he kept the restaurant open for customers after the posted closing time. Loftus, who was scheduled to spend the night at his friend's house that

night, changed his mind and agreed to ride with Sotka back to Westlake, Ohio. While Sotka made statements after the accident that he was taking Loftus home that night, he later supplied an affidavit that he was taking Loftus to the restaurant. He also testified in deposition that he would have either dropped Loftus off at home or taken him to the restaurant, depending on what Loftus wanted. That decision was never made because of the accident, and Loftus had no memory of the events of the evening.

{¶ 7} At around 10:15 p.m., Sotka was driving on State Route 52 in Ottawa county, exceeding a speed of 120 m.p.h. The car left the road and hit a guardrail, causing extensive damage. Sotka's passenger, Loftus, suffered extensive and permanent injuries. As a result of his driving, Sotka was later convicted in the Ottawa County Court of Common Pleas of the crimes of Operating a Vehicle under Impairment while having a blood alcohol content above the legal limit, a misdemeanor of the first degree, and Vehicular Assault, a felony of the fourth degree.

{¶ 8} On May 6, 2020, Loftus filed a complaint against Sotka and Three Palms. He alleged that Sotka was liable for his injuries and that Three Palms, as Sotka's employer, was vicariously liable because at the time of the accident, Sotka was acting within the course and scope of his employment or acting as an agent of Three Palms. State Auto Mutual Insurance Company ("State Auto"), who had issued Three Palms a business insurance policy, intervened in the lawsuit and sought a declaratory judgment action that it need not provide a defense or coverage because

the accident that resulted in Loftus's injuries was not covered by the insurance policy.

{¶ 9} State Auto and Three Palms filed motions for summary judgment. Three Palms argued that it was not vicariously liable because Sotka was not conducting or furthering its business when he crashed his car injuring Loftus. Similarly, State Auto argued that Three Palms' policy excluded the incident because Sotka was not using his car in Three Palms' business.

{¶ 10} Sotka filed a summary judgment motion alleging that Three Palms was liable for the accident as well as asserting the accident was covered by the State Auto insurance policy. Loftus filed a motion for summary judgment arguing the same and seeking a determination of liability against Sotka.

{¶ 11} The trial court granted summary judgment to both Three Palms and State Auto, granted Loftus summary judgment in part, and denied Sotka's motion for summary judgment.[2] In granting Three Palms' and State Auto's motions for summary judgment, the trial court found that there were "no genuine issues of material fact that Defendant Sotka was not within the course and scope of his employment with defendant Three Palms Crocker Park, LLC at the time of the subject accident [and] there is no coverage for the subject accident under State Auto's insurance policy."

---

[2] Loftus's claims against Sotka remain pending in the trial court.

## II. Law and Argument

### A. Assignment of Error

{¶ 12} Loftus appeals, asserting the following assignment of error:

The trial court erred in granting summary judgment to plaintiff-appellee State Automobile Mutual Insurance Company on its intervening complaint for declaratory relief, erred in denying Mr. Sotka's cross-motion for summary judgment, and erred in declaring that there is no insurance coverage for the subject accident under the business owners' insurance policy issued to defendant-appellee Three Palms Crocker Park, LLC. (May 19, 2022 Order. T.d. 265.)

{¶ 13} Loftus alleges that the trial court erred by granting summary judgment because reasonable minds could find Sotka was in the course and scope of his employment at the time of the accident. He argues that Sotka worked remotely on the evening of the accident, that Sotka was driving a regular customer to the restaurant, and that such activity was authorized by Three Palms as part of Sotka's duties as manager. Further, Loftus argues that to the extent the trial court relied on the coming and going rule or defined Sotka as a fixed situs employee, Sotka was not such an employee.

### B. Standards of Review and Applicable Law

#### 1. Summary Judgment

{¶ 14} Under Civ. R. 56, summary judgment is appropriate if the record demonstrates

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for

summary judgment is made, who is entitled to have the evidence construed most strongly in his [or her] favor.

*Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 15} Civ.R. 56(C) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A trial court's grant of summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). If the movant satisfies the initial burden, then the nonmoving party has the burden to set forth specific facts that there remain genuine issues of material fact that would preclude summary judgment. *Id.*

## 2. Interpretation of the Insurance Policy

{¶ 16} An insurance policy is a contract between an insurer and its insured. *E.g., AKC, Inc. v. United Specialty Ins. Co.*, 166 Ohio St.3d 460, 2021-Ohio-3540, 187 N.E.3d 501, ¶ 8. Thus, determining coverage under an insurance policy is a matter of contract interpretation. *Crum & Forster Indemn. Co. v. Ameritemps, Inc.*, 8th Dist. Cuyahoga No. 99610, 2013-Ohio-5419, ¶ 10. The interpretation of insurance policies is a matter of law. *Id.* "In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention." *Id.* at ¶ 11, citing

*Olmstead v. Lumbermens Mut. Ins. Co.,* 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970); *Ohio N. Univ. v Charles Constr. Servs., Inc.,* 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.Ed.3d 762, ¶ 11. "[W]here the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties." *Crum & Forster Indemn. Co.* at ¶ 11, citing *Gomolka v. State Auto Mut. Ins. Co.,* 70 Ohio St.2d 166, 168, 436 N.E.2d 1347 (1982).

### 3. Employer Liability for Employee's Actions While Driving

{¶ 17} An employer may be subject to respondeat superior liability for an employee's accident when the employee is acting within the scope of employment. *Osborne v. Lyles*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992); *see Morrison v. Horseshoe Casino*, 2020-Ohio-4131, 157 N.E.3d 406, ¶ 94 (8th Dist.) ("For an employer * * * to be vicariously liable under the doctrine of respondeat superior, the tort committed by the employee must be committed within the scope of employment.").

{¶ 18} "Conduct is within the scope of a servant's employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." *Rockwell v. Ullom*, 8th Dist. Cuyahoga No. 73961, 1998 Ohio App. LEXIS 4101, 10 (Sept. 3, 1998), citing *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 92, 590 N.E.2d 411 (1990). The Ohio Supreme noted that "the act of an agent is the act of the principal within the course of the employment when the act can fairly

and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 278, 344 N.E.2d 334 (1976); *Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189, ¶ 10.

{¶ 19} Accordingly, the issue of Three Palms' liability rests on whether Sotka, at the time of the accident, was as a matter of law acting within the scope of his employment.

### C. Summary Judgment in Favor of State Auto and Three Palms Was Appropriately Granted in This Case

### 1. State Auto Policy Coverage of Accidents Caused By a Three Palms' Employee While Driving

{¶ 20} State Auto's insurance policy provides liability coverage to Three Palms pursuant to the Commercial General Liability Coverage ("CGL policy"). The CGL policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The parties agree the CGL policy specifically excludes damages from motor vehicle accidents pursuant to exclusion 2.g but dispute whether coverage is provided by the "Hired Auto and Non-Owned Auto Liability" Endorsement ("Auto Endorsement") to the CGL policy. The Auto Endorsement provides CGL coverage for damages "arising out of the use of any 'non-owned auto' in your business by any person." A "non-owned auto" is specifically defined in the Auto Endorsement as

any "auto" you[3] do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

The Auto Endorsement further designates the following as "insureds" for purposes of the Auto Endorsement coverage:

a. [The Named Insured]

b. Any other person using a "hired auto" with [the Named Insured's] permission;

c. For a "non-owned auto":

(1) Any partner or "executive officer" of [the Named Insured]; or

(2) Any "employee" of [the Named Insured] but only while such "non-owned auto" is being used in [the Named Insured's] business.

{¶ 21} In interpreting the language of an insurance policy, the Ohio Supreme Court has noted that "the general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 20, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d at 211, 519 N.E.2d 1380. In *Powell v. Nationwide Mut. Ins. Co.*, 2d Dist. Darke

---

[3] The CGL policy defines "you" and "your" as "the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured" under the policy. The parties do not dispute that Three Palms is the Named Insured in the State Auto policy.

No. 1619, 2004-Ohio-1169, ¶ 26, 38, the court found that exclusionary language in a business insurance policy that restricted coverage to accidents "while used in your business or personal affairs" could serve to exclude claims where the employee was not acting within the scope of their employment.

{¶ 22} In this case, there is no dispute that Sotka was driving a non-owned auto as defined by the Auto Endorsement. However, the Auto Endorsement only provides coverage while the non-owned auto is being used in Three Palms' business. Thus, the issue to be determined for the purposes of summary judgment was whether Sotka used the vehicle in Three Palms' business when the accident occurred?

### 2. There Are No Genuine Issues of Material Fact That at the Time of the Accident Sotka Was Not Acting in the Course and Scope of His Employment or in Furtherance of Three Palms' Business

{¶ 23} The issue of liability on the part of Sotka's employer, Three Palms, is dependent upon whether at the time of the accident Sotka was acting within the scope of his employment. *Osborne, supra.* Similarly, coverage under the insurance policy would be found if Sotka was using the car in Three Palms' business. The trial court determined that neither condition was present upon the record and specifically found that "reasonable minds can come to but one conclusion, that there are no genuine issues of material fact that defendant Sotka was not within the course and scope of his employment with defendant Three Palms Crocker Park, LLC at the time of the subject accident." May 19, 2022 journal entry. We agree.

{¶ 24} Both Loftus and Sotka raise similar arguments regarding Three Palms' liability and State Auto's duty to provide coverage in their respective appeals. They argue that Sotka was acting within the scope of his employment because he managed the restaurant remotely while in Catawba and was driving Loftus, a customer, to the restaurant so that Sotka could supervise the closing of the restaurant.

{¶ 25} In considering the circumstances to determine if Sotka was acting within the scope of his employment on the date of the accident, we note that Sotka left the restaurant at 5:15 p.m., traveled a distance of over 60 miles, and admits the purpose of his trip was to meet with his friend and soon to be new business partner, Loftus. He had drinks and met with another friend and owner of the Canoe Club. There is no evidence Sotka went to Catawba for any business purpose to benefit Three Palms. He did not tell any of the Three Palms investors of his trip to Catawba. This conduct is personal and would not normally be considered to be within the scope of Sotka's employment. Traveling 60 miles and socializing to pursue personal business unrelated to his employer cannot be deemed to be in service of Three Palms or a "natural incident or attribute of the service" Sotka rendered to Three Palms. *Posin*, 45 Ohio St.2d 271, at 278. However, Loftus and Sotka argue that Sotka performed some acts that could be considered to be within the scope of his employment or in furtherance of Three Palms' business during his trip and at the time of the accident.

{¶ 26} Both Three Palms and State Auto moved for summary judgment and we construe the facts in the record in favor of Loftus. *Harless, supra.* In reviewing affidavits or statements however, we may disregard conclusory statements or legal conclusions that are not supported by sufficient facts. *See Crawford v. Millar Elevator Serv. Co.*, 8th Dist. Cuyahoga No. 77277, 2000 Ohio App. LEXIS 2039, at 10 (May 11, 2000) (court not required to consider affidavit that contained only conclusory statements and legal conclusions without sufficient operating facts), *Davis v. Schindler Elevator Corp.*, 98 Ohio App.3d 18, 21, 647 N.E.2d 827 (8th Dist.1994) (Trial court could ignore affidavit where it contained conclusory statements and legal conclusions without stating sufficient supporting facts.).

{¶ 27} As to bringing Sotka's actions within the scope of his employment the evening of the accident, both Loftus and Sotka ask us to consider that Sotka testified in deposition that he "would have been managing the 3 Palms while off site" by communicating with employees by text and telephone and that Sotka intended to return to the restaurant to supervise the closing of the restaurant. Further, they note that Sotka discussed pizza ovens with the owner of the Canoe Club. While the testimony was not clear whether he actually talked to Three Palms employees that night, when considering Sotka's conduct in total, assuming he contacted employees and spoke with others about the general aspects of the operation of a restaurant, those actions are merely incidental to the purpose of his evening: socializing with Loftus and furthering a personal business venture. Moreover, the restaurant

employees present on the evening of the accident closed the restaurant without Sotka's direction or input.

{¶ 28} In short, our review of the record reflects that Sotka's purpose in going to Catawba that evening was to socialize and further his own personal business opportunities. Although some of Sotka's conduct was similar to his duties as a restaurant manager, those actions were merely incidental to the personal nature of his trip to Catawba. Accordingly, the record, when taken in the light most favorable to Loftus, does not provide an issue of material fact as to whether Sotka was acting within the course and scope of his employment.[4]

{¶ 29} In arguing that the accident occurred while Sotka was acting within the scope of his employment or in furtherance of Three Palms' business, Loftus and Sotka both argue that Sotka was bringing Loftus, a customer, back to the restaurant. Sotka testified that his duties as restaurant manager included supervising all aspects of the operations of the restaurant which included "bringing in" customers. Although Sotka testified in his deposition that he would have taken Loftus either to the restaurant or home depending upon Loftus's wishes, upon summary judgment,

---

[4] Three Palms and State Auto raise the issue that Sotka was a fixed situs employee and his excursion from the restaurant was not within the scope of his employment. Sotka and Loftus both argued that Sotka was authorized to leave the restaurant to conduct business in the past in order to pick up necessary supplies or conduct other business. As we find that the record reflects that Sotka was not acting within the scope of his employment at the time of the accident and was not driving the auto in Three Palms' business, whether Sotka was or was not a fixed situs employee is not determinative in resolving the assignments of error.

we assume Sotka was driving Loftus to the restaurant. And even with that assumption, in the context of Sotka's employment with Three Palms, we do not understand Sotka's general duty to "bring in customers" to be so literal that Sotka was expected to bring a single customer to the restaurant from a distance of over 60 miles while driving intoxicated. There was no evidence Sotka had ever personally taxied customers to the restaurant in a privately owned automobile. Such action, especially without precedent, would be unusual and beyond the generally understood meaning of "bringing customers" into a business. More so, Sotka committed the offenses of operating a vehicle under impairment, and vehicular assault, a felony. This conduct cannot "fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Posin*, 45 Ohio St.2d at 278.

{¶ 30} The undisputed circumstances surrounding Sotka's conduct on the night of the accident militate against a finding that Sotka's trip was within the scope of his employment. Sotka was on a personal trip, a large distance from the restaurant, and was not engaged in conduct that was usual or in conformity with other trips attendant to his duties such as picking up supplies for the restaurant. The incidental nature of some of his actions that may have related to his employment during his personal evening out do not serve to transform his trip into one in which he was acting at the time of the accident within the scope of his employment or that can be said were in furtherance of Three Palms' business. The sole assignment of error is overruled.

## III. Conclusion

{¶ 31} Because the record does not reveal genuine issues of material fact that at the time of the accident Sotka was acting in the course and scope of his employment or in furtherance of Three Palms' business, summary judgment was appropriately granted in favor of Three Palms and State Auto.

{¶ 32} Judgment affirmed, and cause remanded to the trial court for further proceedings.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR