[Cite as *Turner v. Pontones*, 2025-Ohio-253.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

SHERRY TURNER, INDIVIDUALLY AND AS ADMR. OF THE ESTATE
OF MEGHAN M. TURNER, DECEASED, ET AL.,

Plaintiffs-Appellants,

v.

KELLY A. PONTONES, ET AL.,

Defendants-Appellant,

v.

STATE FARM FIRE & CASUALTY COMPANY,

Intervenor-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 23 CA 0972, 23 CA 0973**

---

Civil Appeals from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2022 CVC 29963

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

*Atty. Megan J. Frantz Oldham*, *Atty. Collin S. Wise* and *Atty. Lauren A. Gribble*, Plakas Mannos, for Plaintiffs-Appellants and

*Atty. Brian M. Garvine*, Law Office of Brian M. Garvine, LLC, *Atty. Terrence J. Kenneally* and *Atty. Sean M. Kenneally*, Law Offices of Terrence J. Kenneally & Associates Co. for Defendant-Appellant and

*Atty. David L. Lester*, Collins, Roche, Utley & Garner, LLC, for Appellee-Intervernor.

Dated:  January 28, 2025

---

**HANNI, J.**

**{¶1}**   This case presents an interlocutory appeal regarding whether Appellee-Intervenor State Farm Fire and Casualty Insurance Company (State Farm) has a duty to defend an insured under a Farm/Business policy (Policy) in a lawsuit arising out of a fatal accident involving a Polaris RZR 800 vehicle (Polaris RZR).  For the following reasons, we find that the trial court erred in granting summary judgment to State Farm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}**   Appellant Kelly Pontones (Kelly) is the adult daughter of Donald and Kathryn Pontones (collectively Pontones).  Donald and Kathryn own a farm located at 7112 Waynesburg Road NE in Waynesburg, Carroll County, Ohio (farm).  Kelly resides with them at the farm.  Kelly is the sole owner of a Polaris RZR vehicle.  Kelly has occasionally used her Polaris RZR to perform work on the farm.

**{¶3}**   On April 4, 2020 at 10:30 p.m., Kelly was operating the Polaris RZR, which had two seats and no back seats.  Kelly's friend Megan Wackerly sat in the middle of the vehicle between the seats, and Meghan Turner sat in the passenger seat.  Kelly, who was intoxicated, drove the vehicle through a fence and it landed on the passenger side in a ditch.  Kelly and Megan Wackerly were able to exit the vehicle, but Meghan Turner was injured and could not.  The other members of the group stopped to help, and righted the

Polaris RZR. Meghan was transported to Aultman Hospital with a head injury, but she died in the ambulance before it arrived there.

{¶4} On March 18, 2022, Sherry Turner (individually and as the Administrator of the Estate of Meghan Turner) and Mark Turner sued the Pontones for wrongful death. State Farm defended the Pontones under a reservation of rights. State Farm moved to intervene in the lawsuit to address coverage issues and sought a declaration that it had no duty to defend or indemnify the Pontones under the Policy. The trial court granted the motion to intervene on May 25, 2022.

{¶5} The Turners filed a counterclaim seeking a declaration that the Policy covered their claims and State Farm was obligated to defend and indemnify the Pontones. The Turners thereafter dismissed Donald and Kathryn Pontones from the lawsuit.

{¶6} The Policy issued by State Farm to Donald and Kathryn Pontones contained an exclusion to liability coverage. Section II of the Policy provided that farm liability coverage and coverage for medical payments to others did not apply to:

> e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:
>
> 2) a **motor vehicle** owned or operated by or rented or loaned to any **insured;**

(Policy at 29-30, bolded text in original). The Policy contained a Definitions section which defined "**motor vehicle**" under Section II as including:

> a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;
>
> . . .
>
> c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious

vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, mini-bike and personal assistive mobility device;

(Policy at 8) (bolded text in original).

**{¶7}** The Policy further provided the following exemption to the exclusion:

Exclusion e. (2) does not apply to **bodily injury or property damage** arising out of the use of any **non-owned auto** by any person other than you.

(Policy at 61) (bolded text in original).

**{¶8}** There is no dispute that Kelly is not a "you" under the Policy, but she is an "insured." The Policy defined "you" and "your" as [t]he named insured shown in the Declarations." (Policy at 32). Donald and Kathryn were the named insureds in the Declarations of the Policy. (Policy at 4). However, "insured" under the Policy also included relatives that resided in "your" household. (Policy at 32). Accordingly, Kelly was an insured under the Policy, but not a "you" therein.

**{¶9}** State Farm filed a motion for summary judgment on July 17, 2023, arguing that it had no duty to defend or indemnify Kelly under Exclusion e.(2) of the Policy. The Turners and Kelly filed cross-motions for summary judgment.

**{¶10}** On November 20, 2023, the trial court granted State Farm's motion and declared there was no just reason for delay under Civ.R. 54(B).

**{¶11}** Kelly filed a notice of appeal on December 18, 2023. The Turners filed their appeal on December 19, 2023. Both have filed briefs and each assert one assignment of error. State Farm has filed a single brief addressing both appeals. The assignments of error are substantially similar, and will be addressed together.

## ASSIGNMENTS OF ERROR

**{¶12}** Kelly's sole assignment of error asserts:

**THE TRIAL COURT ERRED WHEN IT HELD THE VEHICLE OPERATED BY DEFENDANT KELLY PONTONES ON APRIL 4, 2020 IS NOT AN "AUTO" UNDER THE POLICY**.

**{¶13}** The Turners' sole assignment of error asserts:

**THE TRIAL COURT ERRED IN FINDING THAT THE TERM "AUTO" IN AN INSURANCE POLICY CANNOT, AS A MATTER OF LAW, INCLUDE A UTILITY TASK VEHICLE (UTV) WHERE: (1) THE POLICY DOES NOT DEFINE THE TERM "AUTO" OR EXCLUDE UTVS FROM COVERAGE; (2) ORDINARY DEFINITIONS OF THE WORD, INCLUDING BLACK'S LAW DICTIONARY, CONFIRM THAT A UTV CAN BE CONSIDERED AN AUTO; AND (3) OHIO LAW REQUIRES AMBIGUITY IN AN INSURANCE POLICY TO BE CONSTRUED AGAINST THE INSURER, PARTICULARLY WHEN AN EXCLUSION FROM COVERAGE IS INVOLVED.**

## STANDARD OF REVIEW

**{¶14}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before a trial court grants summary judgment, it must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d 598, 603 (8th Dist.1995).

{¶15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997). In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

## SUMMARY OF ARGUMENTS

{¶16} Kelly and the Turners contend that Kelly's Polaris RZR falls under the Policy's definition of "non-owned autos." They acknowledge that the Policy specifically excludes coverage for recreational vehicles, but they rely on the exception to that exclusion for "non-owned autos" to assert that coverage was restored. They assert that the word "auto" is not defined in the Policy, and therefore, the plain and ordinary meaning of the word "auto" is used, which would include the Polaris RZR.

{¶17} State Farm submits that: 1) the Policy excludes coverage for motor vehicles, which is defined in the Policy (in part) as a recreational vehicle designed principally for use off public roads; 2) the Polaris RZR is a recreational vehicle designed for use off of public roads; and 3) because the Polaris RZR is a recreational vehicle and is not permitted to ride on public roads, it is not an "auto" under any reasonable definition of that word, so it cannot be a "non-owned auto" for coverage purposes.

### Legal Principles Used in Interpreting Insurance Contracts

{¶18} Generally, a "non-owned auto" provision refers to a vehicle owned by an employee, or other insured under a business policy, that is involved in an accident while

engaged in some pursuit of the business. *Loftus v. Three Palms Crocker Park, LLC*, 2023-Ohio-926, ¶ 20 (8th Dist.). Further, insurance contracts should be examined as a whole and we "presume that the intent of the parties is reflected in the language used in the policy*." Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 245-46 (1978).

{¶19} In the instant Policy, "non-owned auto" is undefined. The trial court was therefore required to look at common definitions and other parts of the policy to understand this phrase. One of the most crucial definitions in the policy is that of "motor vehicle," because motor vehicles are excluded from coverage, except for "non-owned autos." "Autos" and "non-owned auto" are not listed in the detailed definition of what is, and what is not, a "motor vehicle," but many other things are.

{¶20} "Motor vehicle" is defined under the policy as:

FE-1351 FARM/RANCH POLICY ENDORSEMENT DEFINITIONS

. . .

8.  "motor vehicle", when used in Section II of this policy, means:

a.  a land motor vehicle designed for travel on public roads or subject to motor vehicle registration.

. . .

c.  a "recreational vehicle" while off an insured location.

"Recreational vehicle" is defined as a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle,

amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, mini-bike and personal assistive mobility device; * * *.

. . .

(FE-1351 Farm/Ranch Policy Endorsement 8(c), 7/17/23).

{¶21} Kelly concedes that the Polaris RZR is a "recreational vehicle" as defined in the Policy. (Kelly Br. at 10). The Turners concede the same. (Turners' Br. at 9). However, they contend that the trial court erred by holding that a "recreational vehicle" designed for use off of public roads is not an "auto" under the plain and ordinary meaning of the word. They argue that the Policy failed to specify that "auto" under the exception clause excludes recreational vehicles. They submit that State Farm, as the drafter of the Policy, could have clarified that "non-owned auto" excluded recreational vehicles. Kelly and the Turners argue that because State Farm failed to do so, the term is ambiguous and must be construed in favor of coverage.

{¶22} Appellants cite a variety of cases representing the principle that an insurance contract should be construed against the drafter, which here is State Farm. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988).

{¶23} We agree. State Farm could have specifically defined the term "auto" in the "non-owned auto" exception to the exclusion of coverage. It did not. State Farm bolded numerous terms throughout its policy and defined them in the definitions section therein. It left the term "auto" under the "non-owned auto" exception provision unbolded and undefined.

{¶24} The Ohio Supreme Court has held:

It is generally the role of the finder of fact to resolve ambiguity. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted

strictly against the drafter and in favor of the nondrafting party. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured.

*Galatis*, 2003-Ohio-5849, ¶ 13. Despite this well-settled law of contract construction, the trial court instead construed the ambiguity in the policy at issue in favor of the insurance company.

**{¶25}** The parties cite many definitions of "auto" and "automobile" that fit the outcome they hope to achieve in this case. Kelly and the Turners cite to the following:

1. "A vehicle with four wheels and an engine. They move people and cargo around. Gasoline is the fuel for this transportation method. Some have electric or water run engines as well." (thelawdictionary.org)

2. "[A]ny registered or unregistered vehicle used for transportation. Vehicles used for transportation include but are not limited to cars, trucks, motorcycles, boats, snowmobiles, animal-drawn vehicles, and even animals." (https://secure.ssa.gov/poms.nsf/lnx/0501130200)

3. "[A] usually four-wheeled automotive vehicle designed for passenger transportation." (www.meriam-webster.com)

4. "A self-propelled passenger vehicle that usually has four wheels and an internal-combustion engine, used for land transport." (https://ahdictionary.com/word/search.html?q=automobile)

5. "Automobile is defined as vehicle. Also known as auto, car, motorcar." (www.brittanica.com)

6. "A car." (www.collinsdictionary.com)

They also cite eight other definitions that fall between the more specific examples in the first two definitions, and the very generic definition in the *Collins Dictionary* of "a car." State Farm also cites a number of definitions, including:

1. "[A] car, usually four-wheeled, propelled by an engine or motor that is part of it, and meant for traveling on streets or roads; a motorcar." (*Webster's New Twentieth Century Dictionary* 126, 127 (2d Ed. 1983))

2. "[A] passenger vehicle designed for operation on ordinary roads and typically having four wheels and a gasoline or diesel internal-combustion engine." (www.dictionary.com)

3. "[A] passenger vehicle designed for operation on ordinary roads and typically having four wheels and a gasoline or diesel internal-combustion engine." (*Collins Dictionary* (https://www.collinsdictionary))

{¶26} Clearly this demonstrates that there are many "plain and ordinary" definitions of "auto." However, the trial court cited a single definition of "automobile" provided in the *New Oxford American Dictionary*, which defined "automobile" as a "land vehicle designed for carrying passengers on public roads." (J.E. 11/20/2023, 5, citing *New Oxford American Dictionary*, 109-100 (3rd Ed. 2010)). Based upon this definition, the court held that a "recreational vehicle" designed for use off public roads was not an "auto" in the exception under the plain and ordinary meaning of the word "automobile." (J.E. 11/20/2023, 4). The court cited to Ohio appellate cases and a Kansas case holding that "autos" or "automobiles" did not include motorcycles and off-road vehicles. (J.E. 11/20/2023, 5).

{¶27} Yet Appellants pointed to a plethora of other available definitions of the term "auto." None of these definitions are unreasonable or absurd. Therefore, the trial court should not have discarded these definitions. They show that the term "auto" is reasonably susceptible to more than one meaning, thus creating ambiguity.

Case Nos. 23 CA 0972, 23 CA 0973

{¶28} Since this is a de novo standard of appellate review, we grant no deference to the trial court decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Interpreting an insurance contract is a matter of law. *Leber v. Smith*, 70 Ohio St.3d 548, 553 (1994).

{¶29} "[L]anguage in insurance policies is selected by the insurers, and they have ample opportunity to specifically define terms and protect themselves from liability." *Miller v. Motorists Mut. Ins. Co.*, 2011-Ohio-6099 (11th Dist.), citing *Gomolka v. State Auto. Mut. Ins. Co.,* 70 Ohio St.2d 166, 169 (1982). Moreover, an insurer claiming that a policy exclusion removes insurance coverage must show that the exclusion specifically applies. *Raudins v. Hobbs*, 2018-Ohio-2309 (8th Dist.). If exclusions or exceptions are ambiguous, we construe them strictly against the insurer. *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, ¶ 11.

{¶30} We also generally presume that exceptions that are not clearly excluded are included in the policy because "[i]t is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words or phrases that could be construed in a variety of ways." *Andersen v. Highland House Co.*, 2001-Ohio-1607. Accordingly, in order to exclude coverage, the insurance company must show that the provision has only one reasonable interpretation. *Id.*

{¶31} We find that the term "auto" in the exception clause is capable of a number of plain and ordinary meanings. The number of definitions of the term and the caselaw cited by Appellants in response to the summary judgment motion establish reasonable susceptibility to more than one interpretation or meaning. We further find that no unnatural, strained, or absurdity results from Appellants' interpretation of the exception to the exclusion. The trial court adopted an even more restrictive plain and ordinary meaning to the term "auto" by holding that "auto" "is a land vehicle designed for carrying passengers on public roads." (J.E. 11/20/2023, 5). The court did not construe the Policy against State Farm, the drafter of the Policy. "Ambiguous language in an insurance contract is construed against the insurance company." *Nationwide Mut. Fire Ins. Co. v. Pusser*, 2020-Ohio-2778, quoting *Dominish v. Nationwide Ins. Co.,* 2011-Ohio-4102, ¶ 7.

{¶32} For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are sustained. The trial court's judgment is reversed and this matter is remanded for the trial court to enter summary judgment in favor of the Appellants.

Waite, J., dissents with dissenting opinion.

Dickey, J., concurs in judgment only with separate concurring opinion.

Dickey, J., concurring in judgment only.

{¶33} While I agree the term "auto" is ambiguous and the ambiguity must be strictly construed against State Farm, I write separately to provide the additional facts, law, and analysis that led to my conclusions.

{¶34} There is no dispute that Kelly is an "insured" under the Farm/Ranch policy. The policy defines "insured" in relevant part as "you and, if residents of your household: a. your relatives." State Farm concedes Kelly resides at the "residence premises."

{¶35} There is likewise no dispute that Meghan's death, which occurred off of the insured location, would be covered by the policy in the absence of the motor vehicle exclusion. Coverage M, captioned "Medical Payments to Others," reads in relevant part:

> We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.
>
> . . .
>
> 2. to a person off the insured location, if the bodily injury:
>
> . . .
>
> b. is caused by the activities of an insured.

{¶36} "Bodily injury" is defined by the policy as "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom."

{¶37} Finally, the parties agree the accident in the Polaris RZR is excluded from coverage as a consequence of Section II of the policy, captioned "Exclusions," which reads in pertinent part:

Case Nos. 23 CA 0972, 23 CA 0973

Coverage L – Farm Liability and Coverage M- Medical Payments to Others do not apply to:

. . .

e.  Bodily injury . . . arising out of the ownership, maintenance, use, loading or unloading of:

. . .

(2) a motor vehicle owned or operated by or rented or loaned to any insured[.]

{¶38} Relevant to the above-captioned appeal, the term "motor vehicle" when used in Section II of the policy includes: "a 'recreational vehicle' while off an insured location." (Farm/Ranch policy at p. 8.) "Recreational vehicle" is further defined as "a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device." (*Id.*)

{¶39} However, the policy provides an exception to the motor vehicle exclusion, which reads in relevant part, "Exclusion e.(2) does not apply to bodily injury . . . arising out of the use of any non-owned auto by any person other than you." (*Id.* at 61.)

{¶40} The lead opinion and the dissent misstate two significant facts regarding the policy. First, the dissent refers to the "1.5 acre farm" as the "insured location." However, "Insured location" is defined by the policy in relevant part as:

(a)    the    farm    premises    (including    grounds    and    private approaches) which are:

(1)    described in the Declarations; or

(2)    acquired by you during the policy period;

(b) the residence premises[.]

(*Id.* at 33.)

**{¶41}** The 1.5 acres appears to refer to the residence premises. Although there is no property description in the Declarations, page six of the Declarations, under the caption, "Limits of insurance," reads "TOTAL ACRES 75." Further, the Pontoneses testified they use approximately 100 acres of their property for farming and pasturing animals, and growing and baling hay for personal use.

**{¶42}** Next, both the lead opinion and the dissent find the term "non-owned auto" is not defined in the policy. As a consequence, they rely on the Eighth District's opinion in *Loftus v. Three Palms Crocker Park, LLC*, 2023-Ohio-926 (8th Dist.), for the proposition that, "[g]enerally, a 'non-owned auto' provision refers to a vehicle owned by an employee or other insured under a business policy, that is involved in an accident while engaged in some pursuit of the business." Lead Opinion at ¶ 18, *see also* Dissent at ¶ 95.

**{¶43}** However, the Eighth District in *Loftus* did not provide a general definition of the term, but instead interpreted specific policy language defining a "non-owned auto" as "any 'auto' you do not own, lease, hire, rent, or borrow which is used in connection with your business. This includes 'autos' owned by your 'employees,' . . . but only while used in your business or personal affairs." *Loftus* at ¶ 20.

**{¶44}** While it is true the term "auto" is undefined in the policy at issue in this appeal, the policy defines "non-owned auto," in relevant part, as "any auto you do not own, lease, hire, or borrow which is used in your farming operation." Unlike the policy language in *Loftus,* the policy in this appeal does not limit the exception to the motor vehicle exclusion to accidents occurring while the auto is used in the policyholders' business or personal affairs.

**{¶45}** Nonetheless, the dissent rejects Appellants' argument that the Polaris RZR was "used in the farming operation," because "[i]t is unquestionable. . . that [the Polaris RZR] was not being used in the farming business when the accident occurred, or at any time of the entire day of the accident and cannot be used to support the conclusion

reached by the majority opinions, here." Dissent at ¶ 113. In other words, the dissent fashions a definition of "non-owned auto" that is directly at odds with the definition provided by the policy. The dissent contends that a covered injury must occur while the RZR is being used in the farming operation, or in close temporal proximity to its use in the farming operation. However, the policy language does not require that the accident occur when the Polaris RZR is being used in the farming operation, only that the non-owned auto has been used in the farming operation prior to the accident. There is no need to look outside of the four corners of the policy, as the term "non-owned auto" is specifically defined therein.

{¶46} On June 23, 2022, with leave of Court, State Farm filed its "Intervention Complaint" seeking a declaration regarding its duty to defend and indemnify Kelly in this case. "An insurer's duty to defend is both broader than and distinct from its duty to indemnify." *Acuity v. Masters Pharm., Inc.*, 2022-Ohio-3092 ¶ 12, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 2007-Ohio-4948, ¶ 19. When determining whether an insurer has a duty to defend, the court must "look to the scope of the allegations of the underlying complaint filed against the insured" and compare it with the policy's coverage. *Masters Pharm.* at ¶ 12. " 'If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action.' " *Id.*, quoting *Ward v. United Foundries, Inc.*, 2011-Ohio-3176, ¶ 19. An insurer, however, has no duty to defend an action "when all the claims are clearly and indisputably outside the policy coverage." *Masters Pharm.* at ¶ 12. The duty to indemnify, on the other hand, arises only if liability in fact exists under the policy. *Wedge Prods. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65, 67 (1987).

{¶47} Generally, the party seeking to recover under an insurance policy bears the burden of demonstrating that the policy provides coverage for the particular loss. *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273 (1999). However, when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion. *Continental Ins. Co. v. Louis Marx & Co.*, 64 Ohio St.2d 399 (1980), syllabus.

Case Nos. 23 CA 0972, 23 CA 0973

{¶48} Further, when an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract. *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 549 (2001), citing *Home Indemn. Co. of New York v. Plymouth*, 146 Ohio St. 96 (1945), paragraph two of the syllabus. "It is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words or phrases that could be construed in a variety of ways. . . . [I]n order to defeat coverage, 'the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question.' " *Andersen* at 549, quoting Reiter, Strasser & Pohlman*, The Pollution Exclusion Under Ohio Law: Staying the Course*, 59 U.Cin.L.Rev. 1165, 1179 (1991).

{¶49} We review de novo a decision granting summary judgment based on the interpretation of an insurance contract. *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, ¶ 12, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). The interpretation of a contract is a question of law, and insurance policies are construed in accordance with the same rules as other written contracts. *Acuity v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 11, 30 ("Insurance policies are contracts. And when we interpret contracts, we must take their language seriously.").

{¶50} When confronted with an issue of contractual interpretation, the role of the court is to "give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). We examine the insurance policy as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Galatis* at ¶ 11, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

{¶51} When the language of an insurance policy is clear and unambiguous, we look no further than the writing itself to determine the parties' intent. *Galatis* at ¶ 11. Like any other contract, its terms are given their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy. *Id.*; *see also Gomolka v.*

*State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982) ("[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined."). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16.

**{¶52}** Generally, courts should not grant summary judgment when an ambiguity exists, *see Galatis*, 2003-Ohio-5849, ¶ 13 ("It is generally the role of the finder of fact to resolve ambiguity."), however, if the extrinsic evidence stands undisputed, then the court may take this step. *East Liverpool v. Owners Ins. Co.,* 2021-Ohio-1474, ¶ 26 (7th Dist.), citing *Lewis v. Mathes*, 2005-Ohio-1975, ¶ 25 (4th Dist.) ("Ordinarily, summary judgment is inappropriate when contractual language is ambiguous, because a question of fact remains. . . . But if the extrinsic evidence demonstrates that no genuine issue of material fact exists, we conclude that summary judgment may still be appropriate."); *see also Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 2007-Ohio-5576, ¶ 60 (1st Dist.) (affirming the trial court's decision to grant summary judgment in part because the extrinsic evidence resolved the ambiguity). Extrinsic evidence offered to establish the parties' intent may include circumstances surrounding their negotiations or actions at the time they entered into the contract, the objectives they intended to accomplish, and any actions by the parties demonstrating how they interpreted the ambiguous term. *See Covington v. Lucia*, 2003-Ohio-346, ¶ 18 (10th Dist.). However, no extrinsic evidence of this kind was offered by the parties.

**{¶53}** Because the insurer customarily drafts the insurance contract, any ambiguity in an insurance contract is generally construed against the insurer and in favor of the insured. *Galatis* at ¶ 13 ("[W]here the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party."); *Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 6 ("If provisions are susceptible of more than one interpretation,

Case Nos. 23 CA 0972, 23 CA 0973

they 'will be construed strictly against the insurer and liberally in favor of the insured.' "), quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. "In other words, the insurer, being the one who selects the language, must be specific in its use, and an exclusion from liability must be clear and exact in order to be given effect." *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 174 (1968).

**{¶54}** However, there are limits to the general rule. Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who seeks coverage and strictly against the insurer who drafts the instrument. *Galatis* at ¶ 18. In other words, " 'a court cannot create ambiguity in a contract where there is none.' " *Sauer v. Crews*, 2014-Ohio-3655, ¶ 12, quoting *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. Therefore, courts must not read insurance policies in an overly circumscribed fashion. *Sauer* at ¶ 13, citing *Gomolka* at 172. Further, a term is not ambiguous simply because it is not defined in the policy. *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 2004-Ohio-7102, ¶ 23.

**{¶55}** While the lead opinion and the dissent agree the term "auto" is ambiguous, where "the plaintiff is not a party to [the] contract of insurance . . ., [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party." *Cook v. Kozell*, 176 Ohio St. 332, 336 (1964). Courts apply this rule where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums. *Id.* "When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant." *Galatis*, 2003-Ohio-5849, ¶ 35.

**{¶56}** The dispute between the lead opinion and the dissent turns in large measure on whether the ambiguity in the policy is strictly construed against State Farm. As a consequence, this particular exception to the general rule requires further elucidation.

**{¶57}** In *Cook,* Kozell was involved in a collision while driving an automobile recently purchased from Euclid Ford Company. Euclid Ford Company owned a garage

liability insurance policy issued by Continental.  Because the title to the automobile had not transferred when the accident occurred, Kozell argued the automobile was still owned by Euclid Ford Company and Kozell was an insured based on a permissive user clause in the policy.  The policy extended coverage "until delivery."

{¶58} The Ohio Supreme Court reasoned that Kozell was "not a party to this contract of insurance and, therefore, is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party." *Cook* at 336.  The Court further opined the construction urged by Kozell would be a disadvantage to both parties to the contract:

> It would make Continental liable for damages for which its named insured is not liable and for a hazard not covered by the policy, and the Euclid Ford Company has no interest in covering the purchaser of an automobile for liability for property damage which such purchaser causes through his negligent operation of the automobile after the company has delivered it to him. This could only result in higher insurance premiums for the Euclid Ford Company. An insured gets the coverage he pays for, and, if the coverage is to be increased beyond that which he needs or for which the policy provides, the premiums will necessarily be increased. Therefore, the plaintiff who is not a party to the contract is not in a position to urge a construction of the contract which would be detrimental to both parties to the contract.

*Id.*

{¶59} Forty years later, the Ohio Supreme Court applied the *Cook* rule in *Galatis, supra*.  In *Galatis*, the Court overturned two cases, which stood for the proposition that "you" in a commercial automobile policy refers to both employees of the insureds while operating their personal automobiles on personal time (*Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,* 85 Ohio St.3d 660), as well as the employees' relatives while operating their

personal automobiles (*Ewaza v. Yasuda Fire & Marine Ins. Co. of Am.,* 86 Ohio St.3d 557).  Citing *Cook*, the *Galatis* Court opined:

> In *Scott-Pontzer*, we failed to analyze how ruling that an employee is insured outside the course and scope of employment favors the policyholder.  Rather, we asked which construction favored the claimant. *While an ambiguity is construed in favor of one who has been determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder.  Id.* Accord *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.* (1981), 66 Ohio St.2d 32, 34, 20 O.O.3d 20, 418 N.E.2d 1381 ("It is undisputed that one seeking to recover on an insurance policy generally has the burden of . . . demonstrating coverage under the policy"). If the policyholder's interest is not considered at this initial phase, we risk construing the policy against the policyholder. *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 ("Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio"). *Scott-Pontzer* concluded otherwise.

> In resolving this alleged ambiguity, the proper question is whether interpreting the policy to cover all employees of the policyholder, regardless of whether the employee is acting within the course and scope of employment – and all family members of the employees – favors the policyholder.

> The purpose of a commercial auto policy is to protect the policyholder. *King v. Nationwide Ins. Co., supra.* Providing uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policyholder's interests. See *Cook v. Kozell*, 176 Ohio St. at 336, 27 O.O.2d 275, 199 N.E.2d 566.

*King* held that the use of a vehicle "by and for" the corporate policyholder precipitated coverage. This holding is reasonable because it arguably benefits the policyholder to insure against losses sustained by those operating vehicles on its behalf. This point was lost in *Scott-Pontzer*, which did not focus upon the critical inquiry of whether the loss occurred within the scope of employment – a necessary factor for the establishment of insurance coverage in *King*.

*Scott-Pontzer* ignored the intent of the parties to the contract. Absent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees. The *Scott-Pontzer* court construed the contract in favor of neither party to the contract, preferring instead to favor an *unintended* third party. The *Scott-Pontzer* court even acknowledged that the expansion of coverage for an employee outside the course and scope of employment "may be viewed by some as a result that was not intended by the parties to the insurance contracts at issue." 85 Ohio St.3d at 666, 710 N.E.2d 1116.

(Emphasis added) *Galatis* at ¶ 35-39.

**{¶60}** However, in this case, there is no dispute that Kelly is an "insured**,"** by virtue of the specific contractual definition of that term. Further, the parties do not dispute that Kelly is an "insured" under the policy. Insofar as Kelly is "one who has been determined to be an insured," *Galatis, supra*, any ambiguity in the policy is to be construed in her favor. She is not asserting the preliminary question of whether she is an "insured" like the individuals seeking coverage in *Cook* and *Galatis.* Moreover, she is an intended, not unintended, third-party beneficiary of the policy.

**{¶61}** The Ninth District addressed a similar situation in *Darno v. Westfield Ins. Co.*, 2015-Ohio-2619 (9th Dist.). Thomas Darno sought uninsured motorist coverage through the insurance policy owned by his father, John Darno. Thomas was not a

policyholder, but he was an "insured" under the policy. However, Thomas' Jeep Cherokee was not an insured vehicle under John's policy.

**{¶62}** One evening when the Jeep stalled on the highway, Thomas and his passenger attempted to push the vehicle to the side of the highway. The passenger called out to Thomas to alert him that another vehicle was approaching in the same lane, but despite Thomas' efforts to get clear of the Jeep, he was struck by the other vehicle. The policy contained an exclusion for uninsured motorist coverage when the insured was "occupying" a non-covered vehicle.

**{¶63}** The Ninth District concluded the policy language "occupying" was ambiguous, observing, "[o]n the one hand, [Thomas] had completely exited the Jeep and was running away from it when he was struck by the oncoming vehicle. On the other hand, [Thomas] was two or three feet away from the Jeep when he was struck, thus within close geographical proximity." *Id.* at ¶ 13.

**{¶64}** Relevant to the above-captioned appeal, Westfield argued Thomas lacked standing to have the policy construed in his favor. The Ninth District opined:

> While it is true that [Thomas] was not a named party to the insurance policy between his father and Westfield, he certainly was an intended third-party beneficiary, as evidenced by the policy's extension of coverage to "family members."

> The Supreme Court of Ohio has "explained that, in the insurance context, courts must construe ambiguities in favor of the insured." *Hickin v. Am. Guar. and Liab. Ins. Co.*, 9th Dist. Summit No. 21487, 2003-Ohio-6579, 2003 WL 22900491, ¶ 28. " 'A claimant, however, is not necessarily an insured. An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy. When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the *policyholder*, not the claimant.' " (Emphasis sic.) *Id.*, quoting

Case Nos. 23 CA 0972, 23 CA 0973

> *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 34–35.
>
> As we have already determined that the policy here is ambiguous, we are required to construe the policy here in favor of the policyholder. *See* [*Joins v. Bonner*, 28 Ohio St.3d 398, 405, 504 N.E.2d 61 (1986).] Here, the policyholder is [John], [Thomas'] father. As a family member of [John], [Thomas] is explicitly covered under the language of the insurance policy. Therefore, we determine that construing the policy in favor of [John] requires Westfield to provide coverage to [Thomas]. To conclude otherwise would be violative of the clear intent of the policy.

*Id.* at ¶ 16-18.

{¶65} Because Kelly is an "insured," as unambiguously defined by the policy and as conceded by the parties, I find that the ambiguity in the policy must be strictly construed against State Farm and in favor of Kelly. *Galatis* plainly states an ambiguity is construed "in favor of one who has been determined to be insured." *Galatis* at ¶ 35.

{¶66} Even assuming arguendo that the dissent correctly characterizes Kelly as merely a claimant asserting the threshold coverage question, I find nonetheless the policy must be strictly construed against State Farm. *Galatis* instructs us to determine whether a claimant's proposed interpretation of the policy "favors the policyholders." The policyholders in this case are Kelly's parents. There is no question that a broad construction of the term "auto" in the policy favors the policyholders, as Kelly's parents have an interest in Kelly receiving a defense and indemnification in this case, as well as an interest in insuring a piece of equipment used in their farming operation even if it is not used routinely. Further, unlike the car dealership in *Cook* and the employer in *Galatis,* the benefit derived from an interpretation of the ambiguity against State Farm in this case is one for which Kelly's parents would likely pay an increased premium. Therefore, I find Appellants' proposed construction of the ambiguity in the policy favors the policyholders in this case.

Case Nos. 23 CA 0972, 23 CA 0973

**{¶67}** Because Kelly is an "insured," or in the alternative, because Kelly's parents are the policyholders, I find the term "auto" should be broadly interpreted in their favor. Based on the various definitions of the term "auto" provided by Appellants, I agree with the lead opinion that a broad construction of the term does not require that an "auto" is licensed for use on public roads. The Polaris RZR has some characteristics of an all-terrain vehicle (off-road) and some characteristics of a car (automatic transmission, bucket seats, roof, doors). It falls squarely within the commonly-accepted definitions of "auto" provided by Appellants and squarely outside the commonly-accepted definitions of "auto" provided by State Farm.

**{¶68}** Like State Farm, the dissent contends "a determination regarding whether or not the Polaris RZR is designed primarily for use on public roads is absolutely crucial to this case." Dissent at ¶ 107. Both rely on the first part of the definition of "motor vehicle" that is, "a land motor vehicle designed for travel on public roads or subject to motor vehicle registration." Both contend the term "auto" and the foregoing definition are interchangeable, however, there is no provision in the policy which equates the first definition of "motor vehicle" with the definition of the term "auto."

**{¶69}** State Farm, as the drafter of the policy, could have specifically defined "auto" as "a land motor vehicle designed for travel on public roads or subject to motor vehicle registration." Further, State Farm, like the insurer in *Loftus, supra*, could have required the "non-owned auto" exception to apply exclusively to "'autos' owned by your 'employees' . . . only while used in your business or your personal affairs," but chose instead to include in the exception "autos" not owned by "you" and used in the farming operation.

**{¶70}** The dissent argues the Polaris RZR falls squarely within the policy's definition of "recreational vehicle," and therefore, is specifically excluded from the policy. However, the very nature of an exception is that it is first included (in this case, excluded from coverage), then excepted (restored to coverage) due to additional facts or features. While I agree the Polaris RZR is initially excluded from coverage as it is a motor vehicle (a "recreational vehicle" while off an insured location owned by an insured), it is then

excepted from the exclusion because it falls within a broad construction of the term "auto," it is not owned by the policyholders, and it is used in the policyholders' farming operation.

**{¶71}** Finally, despite the general rule that a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, the rule is not applied so as to provide an unreasonable interpretation of the words of the policy. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 2007-Ohio-4917 ¶ 8, citing *Morfoot v. Stake*, 174 Ohio St. 506 (1963). For instance, in *West v. McNamara,* 159 Ohio St. 187 (1953) (cited with favor in *Galatis*), the nephew of the wife of an employee, who was a permissive user of a company automobile, claimed coverage under a policy issued to the company following an accident caused by the nephew while operating the company automobile with his aunt's permission. The Ohio Supreme Court opined "the permittee of a permittee of a named insured, in the absence of express or implied authority of such named insured, cannot effectively permit a fourth person to operate the vehicle so as to bring such person within the protection of the policy." *Id.* at 197. In so holding, the Court recognized "the universal rule that insurance policies are to be construed strictly in favor of the insured operates in favor of such insured persons as are covered by the policy, and, in such a case as the present one, is not applicable to extend the coverage of the policy to absurd lengths . . . ." *Id.*

**{¶72}** The dissent concludes the broad construction of the term "auto," which includes the Polaris RZR, creates an absurd result. To the contrary, unlike a car, truck, or SUV, the Polaris RZR is covered for injuries resulting from its use on the insured location. The policy defines "motor vehicle" in relevant part as:

> a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;
>
> . . .
>
> c. a "recreational vehicle" while off an insured location.

{¶73} In other words, if the Polaris RZR accident occurred on the farm, injuries resulting from the accident would be covered even in the absence of the "non-owned auto" exception. However, if the same accident occurred on the farm, but Meghan was a passenger in Kelly's car, truck, or SUV, the accident would be excluded from coverage, unless Kelly's car, truck, or SUV was used in the farming operation. The broad construction of "auto" in this case merely extends the coverage for a particular type of motor vehicle beyond the insured location.

{¶74} As underscored by the dissent, the policy at issue in this appeal is a farm/ranch policy not a motor vehicle policy. As a consequence, the extension of coverage of a motor vehicle used in the farming operation is a reasonable interpretation of the "non-owned auto" exception.

{¶75} The dissent relies on Kelly's testimony that the use of the Polaris RZR on the farm was infrequent. Members of the Pontones family testified that Kelly used the Polaris RZR to transport hay bales, feed, water, fuel, tools, and other materials and equipment to the field for baling hay. Although Kelly described her use of the Polaris RZR on the farm as occasional, the policy language does not require regular use of the motor vehicle in the farming operation to except it from the motor vehicle exclusion.

{¶76} Finally, the fact that Kelly was intoxicated when the accident occurred does not render the broad reading of the term "auto" unreasonable. While the policy specifically excludes injuries which are expected or intended by the insured, or which are the result of willful and malicious acts of the insured, injuries resulting from intoxication of the insured are not excluded from coverage.

{¶77} The Ohio Supreme Court has recognized at least two instances where the broad construction of an ambiguous term was not warranted because it created an absurd result: First, where coverage under a commercial business policy is extended to an employee and his relatives, while operating their personal vehicles on personal time (*Scott-Pontzer* and *Ewaza*), and second, where coverage under a commercial business policy is extended to the nephew of the wife of the employee by way of a commercial business policy (*McNamara*). I do not find the broad reading of the term "auto" in this

case creates the absurd result that occurred or would have occurred in the foregoing cases.

**{¶78}** As previously stated, "[i]t is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words or phrases that could be construed in a variety of ways. . . . [I]n order to defeat coverage, 'the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question.' " *Andersen* at 549, quoting Reiter, Strasser & Pohlman*, The Pollution Exclusion Under Ohio Law: Staying the Course*, 59 U.Cin.L.Rev. 1165, 1179 (1991).

**{¶79}** In the absence of extrinsic evidence offered to establish the parties' intent, I agree the term "auto" in the policy is ambiguous, and as a consequence, should be construed strictly against State Farm and broadly in favor of Kelly as an "insured," or in the alternative, Kelly's parents as the policyholders. I further find the result in this case is neither absurd nor at odds with the remainder of the policy. Accordingly, I would reverse the summary judgment entered in favor of State Farm and remand the matter to the trial court to enter summary judgment in favor of Appellants.

Waite, J., dissenting.

**{¶80}** I respectfully dissent from the majority opinions to reverse the partial summary judgment of the trial court on whether State Farm had a duty to defend Kelly Pontones following her ATV accident on April 4, 2020. I agree with Appellee State Farm that its insurance policy excludes coverage for recreational vehicles, and that it is unreasonable to contrive a definition of "auto" or "non-owned auto" in order to create coverage for a vehicle that is clearly excluded from coverage. Based on the evidence in the record, Appellants' argument and proposed definition of "auto" contradicts the terms of policy. Partial summary judgment in favor of Appellee State Farm should be affirmed.

Facts and Procedural History

**{¶81}** While I agree for the most part with the recitation of the facts in the majority opinions, there are a few facts that must be highlighted but are somewhat glossed over. First and foremost, the State Farm policy issued to Donald and Kathryn Pontones is a Farm/Ranch insurance policy covering their property at 7112 Waynesburg Road, including the house and approximately 1.5 acres of land. It is not an auto insurance policy.

**{¶82}** Second, Kelly and her friends were not using the Polaris RZR ATV on or near the farm or the covered property when the accident occurred, nor was it being used for farm business. Kelly and her friends first traveled to Mineral City in Carroll County, approximately ten miles from the Pontones' farm. They stayed two or three hours. After returning to the Pontones' home, they then took another ride, this time to trails near Lake Mohawk, also about ten miles away. They rode to an area known as "the bowl," and took a trail to Citrus Road (Carroll County Road 68). This part of Citrus Road is approximately 3.5 miles from the Pontones' farm. The accident took place on Citrus Road, 3.3 miles from the Pontones' farm. The policy does not cover the public road where the accident occurred.

**{¶83}** Third, we agree that the definition of "auto" is undefined and is ambiguous in this case. Therefore, all the evidence presented by the parties may be used to resolve

the question of whether the Polaris RZR ATV was an "auto," or more precisely, a "non-owned auto," under the policy. The parties engaged in substantial discovery prior to summary judgment, which included 18 depositions. The deposition testimony established that the Polaris RZR ATV was an off-road vehicle, not designed for use on paved roads. There is deposition testimony that it is illegal in Ohio to drive off-road vehicles such as the Polaris RZR on paved roads, except under very limited circumstances that do not apply in this case. Kelly Pontones' deposition contains testimony that the vehicle was not registered with the State of Ohio as an automobile or any other type of vehicle, nor did Kelly purchase automobile insurance or any other type of insurance for the vehicle. (Kelly Depo. pp. 28, 30.) Kelly did not refer to the vehicle as an "auto" or "automobile," but instead, as a "utility task vehicle." (Kelly Depo. p. 30.) Kelly testified that it was an "off-road vehicle" that was "not designed for use on roads". (Kelly Depo. p. 147.) Appellee has noted that none of the persons deposed in this case have referred to the Polaris RZR as an "auto" or "automobile."

### Legal Principles Used in Interpreting Insurance Contracts

**{¶84}** Although the majority opinions cite as authority one of the most important insurance law cases in Ohio, *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, it glosses over certain very important principles from that case and other related cases dealing with basic rules for interpreting contracts. Although it is generally true that ambiguities in an insurance contract are resolved in favor of the insured and against the drafter, this proposition is not true where the question involves the preliminary matter of determining whether there is coverage at all that must be defended by the insurance company. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Id.* at ¶ 14, quoting *Morfoot v. Stake*, 174 Ohio St. 506 (1963), paragraph one of the syllabus. "Likewise, where 'the plaintiff is not a party to [the] contract of insurance . . ., [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly

Case Nos. 23 CA 0972, 23 CA 0973

against the other party.'"  *Id.*, quoting *Cook v. Kozell*, 176 Ohio St. 332, 336 (1964).  In this case, Kelly cannot simply assert that any ambiguities in the policy must be construed in her favor.

**{¶85}**  Furthermore, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy."  *Galatis* at ¶ 11, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, (1987), paragraph one of the syllabus.  Also, "[a] court . . . is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties."  *Galatis* at ¶ 12.

**{¶86}**  "Words or phrases should not be read in isolation."  *Rubel v. Johnson*, 2017-Ohio-9221, ¶ 19 (7th Dist.).  "In construing a written instrument, effect should be given to all of its words, if this can be done by any reasonable interpretation."  *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 666 (1992), quoting *Wadsworth Coal Co. v. Silver Creek Mining & Ry. Co.*, 40 Ohio St. 559 (1884), paragraph one of the syllabus.

**{¶87}**  "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46 (1978).  "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined."  *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-68 (1982).

**{¶88}**  It appears to me that the majority opinions have disregarded many of these basic contract law principles and have applied a definition of "auto" that seems both unreasonable and absurd in the context of the specific policy under review.

## Common Ground Between the Parties

**{¶89}** All parties agree that the phrase "non-owned auto," and the specific word "auto," are not defined in the policy. All parties agree that a plain and ordinary meaning should apply in this case. All parties agree that "auto" is short for "automobile."

**{¶90}** Appellants spend a great deal of time arguing about facts and definitions that are not actually in dispute. For example, the parties all agree that:

1. Kelly is not defined as "you" under the policy. "You" only refers to Donald and Kathryn Pontones, the policyholders.

2. Kelly is an insured under the policy because she lives at the farm and is the daughter of Donald and Kathryn Pontones.

3. The "insured location" of the policy includes the farm buildings and the 1.5 acre farm property. It does not include the public road where the accident occurred.

4. The policy covers medical payments to others if the claim is made against an insured such as Kelly, as limited by policy exclusions.

5. The policy excludes coverage for bodily injury or property damage arising out of the use of a motor vehicle owned or operated by an insured such as Kelly, unless an exception to that exclusion applies.

6. The Polaris RZR is a motor vehicle under the policy.

## Key Policy Provisions

**{¶91}** Although it is not made entirely clear in the briefs, the basic reason that Kelly is treated as an insured under the policy is because: 1) the definition of "insured" includes relatives who are residents of the insured premises; and 2) the policy covers bodily injury to a person off of the insured location if it is caused by the activities of the insured (Sec. II, Coverage M, Medical Payments to Others, 2(b)). Again, the policy is not a motor

vehicle policy, but rather, a farm policy.  The only type of motor vehicle directly covered by the policy is a vehicle not licensed for use on public highways and used exclusively to service the insured location.  The place where the accident occurred is not a covered location, as it is more than three miles from the farm.  Thus, Kelly's coverage, if any, is personal to her and her activities, and not as part of vehicle coverage or coverage for the farm premises.

**{¶92}**  There is an exclusion for medical payments to others for bodily injury and property damage arising out of:

1)  ownership, maintenance, use . . .  of

2)  a "motor vehicle" owned or operated by an "insured"

3)  BUT:  the exclusion does not apply to bodily injury or property damage arising out of the use of any "non-owned auto" by any person other than "you."

**{¶93}**  This is the essence of the problem in this case:  does the "non-owned auto" provision of the policy provide coverage for Kelly when the accident involving the Polaris RZR is specifically excluded under the "motor vehicle" exclusion, or more specifically, under the "recreational vehicle" sub-definition of the "motor vehicle" exclusion?  The specific policy provisions are listed below.

**{¶94}**  Section II - Exclusions

1.  Coverage L - Farm Liability and Coverage M - Medical Payments to Others do not apply to:

. . .

e.  **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

. . .

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured** . . .

Exclusion e(2). does not apply to **bodily injury** or **property damage** arising out of the use of any **non-owned auto** by any person other than you.  (Bold type is in original.)

**{¶95}**  Bold type in an insurance policy generally refers to words and terms defined in the policy, but the parties agree that "non-owned auto" (written in bold type) is not defined in the policy.  Generally, a "non-owned auto" provision refers to a vehicle owned by an employee or other insured under a business policy, that is involved in an accident while engaged in some pursuit of the business.  *Loftus v. Three Palms Crocker Park, LLC*, 2023-Ohio-926, ¶ 20 (8th Dist.).  Since "non-owned auto" is not defined, the trial court was required to look at common definitions and other parts of the policy to understand the meaning of the phrase.

**{¶96}** One of the most crucial definitions in the policy is that of "motor vehicle," because motor vehicles are excluded from coverage, except for "non-owned autos." "Autos" and "non-owned auto" are not listed in the detailed definition of what is, and what is not, a "motor vehicle," but many other things are:

FE-1351 FARM/RANCH POLICY ENDORSEMENT

DEFINITIONS

. . .

8. "**motor vehicle**", when used in Section II of the this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration.

. . .

c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, mini-bike and personal assistive mobility device;  . . .

. . .

(FE-1351 Farm/Ranch Policy Endorsement 8(c), 7/17/23 Affidavit of Maude Niedzielski, Exh. A, p. 8, State Farm MSJ, 7/6/23.)

## The Polaris RZR is a Recreational Vehicle

**{¶97}** Appellee cites an overwhelming amount of evidence that the Polaris RZR is a recreational vehicle designed for use off of public roads. Appellant and the majority opinions concede that the vehicle is a recreational vehicle. The record contains deposition testimony that it is an off-road vehicle, not designed for use on paved roads. As noted earlier, the record shows that it is illegal in Ohio to drive off-road vehicles such as the Polaris RZR on paved roads; that the vehicle was not registered with the State of Ohio, nor did it have insurance; and that none of the depositions refer to the vehicle as an "auto" or "automobile." Kelly testified that it was an "off-road vehicle" that was "not designed for use on roads". (Kelly Depo. p. 147.) She testified that she primarily rode on tractor paths on farm grounds, rather than roads. (Kelly Depo. p. 35.)

**{¶98}** There are many photographs of the vehicle in the record. They reveal it is an open air vehicle with a cage frame, small partial roof, no side mirrors, a very small partial windshield, with oversized all-terrain tires having very deep tread, a steering wheel, automatic transmission, a small payload area behind, and with headlights and taillights.

**{¶99}** Appellants concede that the vehicle was not registered, but they argue that it is possible it may have been able to be registered as an all-purpose vehicle or utility

vehicle under R.C. 4519.02. At no time do they argue that it could have been registered as an automobile or passenger vehicle.

{¶100} There is no question that, regardless of whether the Polaris RZR may be construed as an "auto," it is most definitely a "recreational vehicle" under the language of the policy. Appellants, and the majority opinions would have us overlook the express exclusion of coverage for recreational vehicles in favor of a different avenue of coverage, under the non-owned auto section of the policy. Appellants argue that if there is any possible interpretation, or any possible ambiguity, in the word "auto" that would overcome the "motor vehicle" exclusion, then we must interpret the policy to provide coverage for Kelly's accident. In other words, Appellants argue that if the Polaris RZR falls within any of the many definitions of "auto" that they cite, coverage must be provided regardless of how unreasonable the interpretation is or how absurd the result. This is not how insurance contracts are interpreted in Ohio, particularly since the *Galatis* case cited above, which specifically precludes reaching an absurd result.

{¶101} *Galatis* arose in the context of a long string of cases interpreting the undefined word "you" in corporate CGL (commercial general liability) policies in a manner to provide uninsured motorist coverage to employees acting outside the scope of employment. *See Galatis, supra.* This was then broadened to include off-duty employees, family members of employees, and others who might have some marginal connection to an employee. These cases were all based on the principle that ambiguities and undefined terms should be interpreted strictly against the insurance companies, to the point of absurdity. *See Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (1999).

{¶102} The reasoning in *Scott-Pontzer* was called "mysterious," "beguiling," "preposterous" and "a mess." *Galatis* at ¶ 19. *Galatis*, in no uncertain terms, rejected the faulty interpretation of the prior *Scott-Pontzer* cases and denied coverage to employees acting outside the scope of employment. I contend this case is similar to *Galatis* in that Kelly, who is generally an insured under the policy as the Pontones' daughter living in their house, also claims to be an insured while located off of the insured

property, engaged in personal pursuits unrelated to farm business, and while operating a vehicle clearly and directly excluded from coverage in another section of the policy.

Defining the meaning of "auto" in the policy

**{¶103}** The parties cite many definitions of "auto" and "automobile" that fit the outcome they hope to achieve in this case. Appellants cite to the following:

1. "A vehicle with four wheels and an engine. They move people and cargo around. Gasoline is the fuel for this transportation method. Some have electric or water run engines as well." (thelawdictionary.org)

2. "[A]ny registered or unregistered vehicle used for transportation. Vehicles used for transportation include but are not limited to cars, trucks, motorcycles, boats, snowmobiles, animal-drawn vehicles, and even animals." (https://secure.ssa.gov/poms.nsf/lnx/0501130200)

3. "[A] usually four-wheeled automotive vehicle designed for passenger transportation." (www.meriam-webster.com)

4. "A self-propelled passenger vehicle that usually has four wheels and an internal-combustion engine, used for land transport." (https://ahdictionary.com/word/search.html?q=automobile)

5. "Automobile is defined as vehicle. Also known as auto, car, motorcar." (www.brittanica.com)

6. "A car." (www.collinsdictionary.com).

**{¶104}** Appellants also cite eight other definitions that fall between the more specific examples in the first two definitions, and the very generic definition in the *Collins Dictionary* of "a car." Clearly Appellants realize that there are many "plain and ordinary" definitions of "auto" (having cited 14 different ones). Hence, they recognize that the trial court was required to make some kind of determination that is consistent with the policy

Case Nos. 23 CA 0972, 23 CA 0973

and that would not result in absurdity. Even among Appellants' proffered definitions there are contradictions, simplifications, and lack of agreement as to how specific the definition of "auto" should be.

**{¶105}** Appellee relies on a number of definitions, three of which have a common thread, namely, that an automobile is a vehicle that is meant to travel on public roads:

> 1. "[A] car, usually four-wheeled, propelled by an engine or motor that is part of it, and meant for traveling on streets or roads; a motorcar." (*Webster's New Twentieth Century Dictionary* 126, 127 (2d Ed. 1983)
>
> 2. "[A] passenger vehicle designed for operation on ordinary roads and typically having four wheels and a gasoline or diesel internal-combustion engine." (www.dictionary.com)
>
> 3. "[A] passenger vehicle designed for operation on ordinary roads and typically having four wheels and a gasoline or diesel internal-combustion engine." (*Collins Dictionary* (https://www.collinsdictionary))

**{¶106}** It is interesting that the parties cite some of the same sources, but with different results. Appellants cite the *Collins Dictionary* themselves, so they are undoubtedly aware of, but never address, Appellee's citation from that same source. That definition includes the distinction that an auto travels on "ordinary roads."

**{¶107}** The main thrust of Appellee's cited definitions is that an automobile, in the context of this policy, is a motor vehicle that is designed to be driven primarily on public roads. Appellee's emphasis on the public roads requirement is easily understood because the policy definition of "motor vehicles," itself, includes this distinction. Part (a) of the definition of a "motor vehicle" is "a land motor vehicle designed for travel on public roads." Part (c) of the definition of "motor vehicle" is "recreational vehicle," which is further defined as "a motorized vehicle designed for recreation principally off public roads." The distinction between vehicles that are driven on public roads and those that are not is specifically provided within the policy itself. The only part of the definition of "motor

Case Nos. 23 CA 0972, 23 CA 0973

vehicle" that "non-owned auto" fits is part (a), regarding "a land motor vehicle designed for travel on public roads." Therefore, a determination regarding whether or not the Polaris RZR is designed primarily for use on public roads is absolutely crucial to this case.

{¶108} The trial court cited a number of cases for the conclusion that failure to provide a specific definition of the word "auto" in a policy does not allow other types of vehicles to be subsumed into a definition of "auto" for the sole purpose of creating coverage. For example, in *Siciliano v. Natl. Mut. Ins. Co.*, 2007-Ohio-6508 (5th Dist.), the appellant was attempting to show that a motorcycle could be classified as an automobile in a policy when the term "private passenger auto" was undefined. "[W]e find a motorcycle is a motor vehicle and an automobile is a motor vehicle, but an automobile is not a motorcycle." *Id.* at ¶ 28. The court referenced an Ohio Supreme Court case that reasoned: "Each word has its own meaning in every day usage, and the purchaser of insurance, as well as the scrivener of the provision, would understand the limited aspects of both 'automobile' and 'motorcycle,' and the broader meaning of 'motor vehicle.' " *Jirousek v. Prudential Ins. Co. of America*, 27 Ohio St.2d 62, 64 (1971). While a recreational vehicle may have more in common with an "auto" than a motorcycle, the purchaser of insurance in this matter, and the scrivener, would understand the difference between an automobile and a recreational vehicle, particularly when "recreational vehicle" is clearly defined in the policy.

{¶109} In *Williams v. Allstate Ins. Co.*, 2003-Ohio-1758 (2d Dist.), the Second District found there was no coverage for an all-terrain vehicle under an automobile policy where automobile was defined as a "motor vehicle with at least four wheels designed for operation principally upon public roads." *Id.* at ¶ 17. Without going into much analysis beyond the use of common sense, the court concluded that an all-terrain vehicle was not an auto under the policy.

{¶110} In *Wright v. Beacon Mut. Indem. Co.*, 87 Ohio Law Abs. 178, 179 N.E.2d 547, 549 (C.P.1961), the question was whether a farm tractor could be considered an "auto" under an automobile policy. As in the instant case, "auto" was not defined in the policy. The court reviewed many cases construing a plain and common definition of the

term "auto" in an insurance policy, and determined: "The manner in which a vehicle is used as well as its construction determines its character. A farm tractor is a machine designed and intended to be used as an agricultural implement. It is not intended or ordinarily used as a means of transportation on the highways although on occasion it may be temporarily operated on them." *Id.* at 553. The court noted that the policy included a definition of "farm type tractor," and that if the tractor could simply be treated as an "auto" there would have been no point in separately defining "farm type tractor" in the first place. The definition of "farm type tractor" would be mere surplusage, and courts strive to avoid that result when interpreting a contract. *Id.* at 556. The court held that a farm tractor was not an auto in the context of an automobile insurance policy under any common definition of "auto." The majority opinions' interpretation in this matter renders the policy definition of recreational vehicle as mere surplusage.

Other unreasonable aspects of Appellants' interpretation

**{¶111}** Under Ohio insurance law, an automobile can only be insured as a self-propelled vehicle designed for and principally used on public roads. R.C. 3927.30. In Ohio, vehicles such as the Polaris RZR are prohibited from use on public roads in almost all circumstances. R.C. 4519.40(A)(1); 4519.401. The statute specifically excludes off-road recreational vehicles and similar vehicles, which must obtain a different type of coverage. Hence, Appellee's argument regarding the common definition of the word "auto" is consistent with Ohio's traffic and insurance law, as opposed to Appellants', which is not.

**{¶112}** The majority opinions' agreement with Appellants' argument requires that the "non-owned auto" clause be read out of context and in isolation. It ignores the fact that the policy is a farm/business policy. The definition of recreational vehicle in the policy is ignored. The references to public roads in the policy are ignored. The purpose of having a "non-owned auto" exclusion is ignored. This leads to what I view as an absurd result of a farm/business policy covering an accident unrelated to farm activities, in a vehicle not owned by the farm, in a location far away from the farm property. As discussed

Case Nos. 23 CA 0972, 23 CA 0973

above, insurance policies are contracts that must be read as a whole to avoid unreasonable or outrageous results. Courts must also attempt to interpret all the provisions of a contract together to avoid reading contradictions into the contract. Appellants' interpretation is not reasonable, as is required by law. I contend the only logical interpretation is that whatever the definition of "auto" might be in the policy, it does not include recreational vehicles such as the Polaris RZR.

{¶113} Appellants also argue that the Polaris RZR fits within the provision of being "used in your farming operation" (Policy Definition 9) because it was used to move bales of hay from time to time. Kelly testified that this use was only "very occasional." (Kelly Depo., p. 26.) It is unquestionable, though, that it was not being used in the farming business when the accident occurred, or at any time of the entire day of the accident and cannot be used to support the conclusion reached by the majority opinions, here.

{¶114} We note that Appellants argue both that the meaning of the word "auto" is not ambiguous, and that it is ambiguous, and assert that the ambiguity must be resolved in their favor. It is apparent that there is no single commonly used definition of the word "auto," thus it is ambiguous for purposes of this case. However, they are incorrect that the issue must be strictly construed against State Farm and to have us adopt definitions that would not only provide an unreasonable result, but would result in an absurdity. For this reason, the definition of "non-owned auto" does not involve any issue of material fact, and instead, must be resolved as a matter of law.

{¶115} Based on the entire context of the policy, the specific definition of "recreational vehicles" in the policy, the ordinary, reasonable definition of "auto" as a vehicle designed primarily for use on public roads, the evidence showing that no one involved in this case refers to the Polaris RZR as an automobile, and the absurdity of the result that Appellants are seeking, I must conclude that the Polaris RZR was not a covered vehicle and the accident was not a covered occurrence. Since the vehicle and the accident are not covered, State Farm has no duty to defend or indemnify Kelly. There is no outstanding question of material fact on this issue. Therefore, Appellants' assignments

Case Nos. 23 CA 0972, 23 CA 0973

of error should be overruled and the partial summary judgment in favor of State Farm should be affirmed.

{¶116} For all of these reasons, I dissent from the majority opinions and I would affirm the judgment of the trial court.

———————————————

For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, granting summary judgment in favor of Appellee State Farm is reversed and this matter is remanded for the trial court to enter summary judgment in favor of the Appellants. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**